Leach Jemison v. The State.

No. 2326. Decided February 19, 1902.

1.—Race Discrimination—Motion to Quash Indictment.

On a motion to quash the indictment, where there is an issue of race discrimination raised as to the constitution of the grand jury, the evidence adduced should be sufficiently definite and explicit as to the number of negroes in the county qualified to set upon the grand jury as would enable the court to pass intelligently upon the question.

2.—Murder—Continuance.

On a trial for murder, a first application for continuance should be granted for absent testimony which is not only very material, but which might entitle defendant to an acquittal, on the theory that he was not the party who fired the shot that killed deceased. (See the absent testimony set out in the opinion.)

Appeal from the District Court of Hunt. Tried below before Hon. H. C. Conner.

Appeal from a conviction of murder in the second degree; penalty, twenty years imprisonment in the penitentiary.

Appellant was charged by the indictment with the murder of Alex Jones, on the 16th day of December, 1900, by shooting him with a pistol.

The following statement of the case is taken from appellant's brief:

"On December 15, 1900, at about 10 or 11 o'clock at night, Alex Jones, colored, was shot and killed in Hunt County, Texas. The killing occurred at or near the residence of Anderson Williams and Coleman Smith, both negro tenants on the farm of B. D. Wilson. Williams and Smith occupied with their families the same set of buildings on said farm. These buildings consist of one frame and one log house of two rooms each, the frame house being west of the log house, with a hall eight or ten feet wide, running north and south between them. Another hall runs east and west between the north and south rooms of the log house. On the night of the killing a large crowd of negroes were assembled at this residence and were engaged in dancing, gambling, and the customary sports and festivities of their race upon such occasions. The night was cloudy and at times a drizzling rain was falling.

"At the time of the shooting and for some time before the deceased was conducting a crap game at which himself and others were gambling, about thirty-five or forty feet south of the frame house. Gambling was also going on about thirty feet east of this game, and also another game was being conducted at the south end of the log house. While these games were being played outside, a dance was going on inside the frame house. At the instant the shooting began, the deceased was lying or kneeling upon the ground gambling, and after it began he arose and ran away from the scene of the shooting. It being reported that no one was hurt, the festivities continued until a few hours later, when the deceased was found dead a short distance from the scene of shooting. Defendant and many other negroes remained upon the ground for an hour or more after the dead body was found, when an officer arrived and put the defendant under arrest."

On the trial one of the principal questions seemed to be the identity of defendant as the party who did the shooting. Defendant, as a witness, testified in his own behalf that he did not shoot the deceased, but that at the time the shooting occurred he was talking to Mary Smith, about thirty or forty feet north of the place where the shooting occurred, near the house.

Defendant made application for continuance, and stated that he expected to prove by the absent witnesses named facts which would show he did not kill deceased.

*J. P. Yates,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of twenty years.

· The question of race discrimination was raised on a motion to quash the indictment. The testimony upon this question is very unsatisfactory, but the weight of it indicates there are very few negro jurors in the county. The present superintendent of public instruction of the county, as well as another witness who had previously held that office, indicate that there are practically no negro jurors in the county competent to serve as grand jury men; the latter stating only four within his knowledge, and two of them had since died. One or two of the witnesses place the number far in excess of this, but the statements are very general. It occurs to us that if, as a fact, there are negro voters in that county who are competent to serve as grand jury men, the witnesses who testify to the facts should certainly know who they are. Where it is easily shown that there are a sufficient number of negro voters in the county who are competent jurors this might not be necessary; but where the testimony covers a range of from two to three hundred grand jurors, to a minimum number of two only, the facts should be more explicit, so the courts may intelligently pass upon that phase of the testimony. It would hardly be held discrimination against the negro race in the selection of jurors by commissioners if there are no negro jurors in the county, or so few in number as to practically amount to none. As the judgment will be reversed upon another proposition, we suggest that this matter be made sufficiently explicit for the court to decide, should it become necessary upon another trial. Out of abundance of caution, it is advisable to procure another indictment, and avoid any further trouble along this line.

Appellant moved a continuance of the cause for the want of the testimony of several witnesses. The evidence places it beyond question that the killing occurred at a negro entertainment; that outside the house there were several different gambling transactions going on, at one of which the killing occurred. There were quite a lot of negro men and women present in and about the house and around where the killing occurred, and about the grounds in the immediate neighborhood of the homicide. The State's case was that appellant did the killing. Appellant's theory, as shown by such testimony as he had at the trial, was that he was not immediately at the scene of the killing, and was in no way connected with it. There were two parties to the transaction,—the slayer and the slain. The evidence adduced shows the absent witnesses were present, and some of them in immediate proximity to the difficulty. Frank Wicks, one of the absent witnesses, was near the place where the shooting occurred. Hamp Gilmore, another, was gambling with deceased when the shooting occurred, and was nearest to him. The absent witness, Mary Smith, was expected to prove that she was talking to appellant at the time of the shooting, about thirty-five or forty feet from the homicide. Some of the other witnesses were expected to prove the same fact. By Matt Shaw he expected to prove that she had had a contro-. versy with deceased about a small sum of money immediately preceding the homicide; that deceased refused to pay her, whereupon she left the

place where he was gaming, went around the house to the north, and told the negro man with whom she had been dancing of her troubles, and asked his assistance; that this negro man immediately left her, and went in the direction of where she had left defendant, and in a very short time the shots were fired which killed deceased. Fred Williams testified for the State that the party who did the shooting came around the west side from the direction of the north end of the house, in company with another negro, who accused deceased, just before the shooting, of having some one else's money. The witness did not understand whether it was Matt Shaw's money deceased was accused of having or not. The State's witness, McLendon, testified that Matt Shaw had a conversation with deceased about some money just before the killing. By Coleman Smith, the occupant of the house where the entertainment was, and where the killing occurred, it was expected to be proved that shortly after the shooting appellant gave Smith his pistol, and assigned as a reason that the officer would be there to investigate the shooting, and he did not want to be arrested for carrying a pistol; that this pistol was delivered to the officers in the same condition in which it had been received by the witness Coleman Smith. The constable McElmurry, who went to the place to investigate the matter and make arrest, testified that Coleman Smith gave him a pistol said to be the one delivered to him by defendant; that he examined this pistol, and found it to be a 45-caliber Colt's, and there was no evidence of it having been recently discharged. This was very shortly after the shooting. The wounds, under the evidence, seem to have been inflicted by a 38-caliber ball. McElmurry's testimony is substantiated by Robertson and Hays Wimberly. This being the first application for continuance, it should have been granted. If these facts are true, or if the jury believed them true, appellant was entitled to an acquittal on the theory that he did not fire the shot that killed deceased. They are very material.

The judgment is reversed, and the cause remanded.

*Reversed and remanded.*